317 So.2d 365

William N. LOWERY

v.

STATE.

3 Div. 227.

Court of Criminal Appeals of Alabama.

May 6, 1975.

Rehearing Denied June 17, 1975.

**516**

Frank W. Riggs, Montgomery, for appellant.

William J. Baxley, Atty. Gen., and John D. Whetstone and Kermit M. Downs, Asst. Attys. Gen., for the State, appellee.

*On Remandment*

BOOKOUT, Judge.

This Court in its original opinion, prior to remandment by the Alabama Supreme Court, did not review certain hospital records nor admission of the death certificate into evidence over objection, due to finding reversible error on the jury charge in question. Since the Supreme Court found the jury charge to have been proper, we must now pass upon the questions presented by admission of those documents. Particular attention has been called to the admission of hospital records solely upon certification by their custodian pursuant to Act No. 77, Acts of Alabama, 1965, 2d Special Session, approved September 30, 1965 (Title 7, §§ 383(1)–383(3) Code of Alabama Recompiled). During the course of the trial, the State called as a witness Dr. William H. Chambless, a Montgomery physician and surgeon, who had treated the deceased, James T. Parham. He testified that he first saw the deceased around 1:30 A. M., May 13, 1972, in the Emergency

Room of Montgomery Baptist Hospital, and operated on him for some three and one-half hours for a gunshot wound. He later performed three more operations then transferred the deceased to the University Hospital in Birmingham on June 3, 1973, where he died some ten days later.

Dr. Chambless testified from his notes, but stated that he did not personally treat the deceased after transfer to the Birmingham hospital although he did confer at times with Dr. George Hallenbeck, the attending physician in Birmingham, by telephone and by mail. He stated that the deceased was dying from the gunshot wound when he transferred him to Birmingham, that:

"My purpose was for referring and transferring the patient, James Parham, to Dr. George Hallenbeck at the University Hospital is because of his extremist condition, with the hopes that possibly with some special procedures, with one type of procedure, with one type of treatment we call hyperalimentation; that is, forcing a lot of protein into this man to give him a better chance of healing."

Dr. Chambless further testified:

"The cause of death was massive gastrointestinal bleeding from a gun shot wound in the abdomen, for which I initially treated him, and operated on him four times, and he continued to go downhill, as was anticipated."

On cross examination, the following occurred:

"Q. (By Mr. Riggs) And you talked to the doctor in Birmingham?

"A. And had letter communication with him.

"Q. He has communicated with you by telephone and by letter; is that right?

"A. That's correct.

"Q. And your testimony about the cause of death is based on those communications?

"A. No; it's because I treated him initially, and he was dying of a continuous process that continued when I first saw him.

"Q. He wasn't dead when he left here, was he?

"A. He was in very critical condition, and he died of the wounds that I treated him for.

"Q. He wasn't dead when he left here was he?

"A. I attested the fact that he died of the wounds that he received for which I operated on him four times.

"Q. Was he dead when he left here?

"A. He was a dying man when he left here, Mr. Riggs.

. . . . . .

"A. . . . He was dying, he was not dead when he left here, he was dying, and he died of the wounds that he sustained."

Certified copies of the hospital records from Montgomery and from Birmingham were introduced over objection pursuant to Act No. 77, *supra*. A certified copy of the death certificate signed by Dr. Hallenbeck in Birmingham was introduced, without authentication by parol evidence, pursuant to Title 7, § 386, Code of Alabama 1940. Counsel for appellant duly objected to admission of those documents and was overruled. He, likewise, objected to Dr. Chambless' testimony concerning cause of death based upon the University Hospital records from Birmingham and his communications with the Birmingham physician. Counsel also objected that the Birmingham hospital records were not mailed to the Clerk of the Circuit Court in Montgomery as required by law, but were mailed to the District Attorney. Likewise, counsel contends the certified copy of the death certificate should not have been admitted as evidence of the cause of death.

**I**

In reviewing the record, this Court finds that the Birmingham hospital records were not delivered to the Circuit Clerk in strict compliance with the wording of Act No. 77, *supra*. We find this to be nonprejudicial since it appears that the District Attorney forthwith delivered the records to the Circuit Clerk and no showing is made that the District Attorney did anything improper with the records while in his custody. Alabama Supreme Court Rule 45.

**II**

We find no fault in Dr. Chambless testifying that in his opinion the deceased was dying from the gunshot wounds when he transferred him to Birmingham. He was an expert witness, and the evidence showed that he treated the deceased extensively, operating on him four times, and could, therefore, express his medical opinion as to the condition of the patient when he last treated him, including his opinion or prognosis that the patient was dying from the gunshot wound. *Cobb v. State,* 50 Ala.App. 707, 282 So.2d 327.

**III**

There is a serious question as to whether Act No. 77, *supra,* applies in criminal prosecutions. It could be said that one of the main purposes for the Act was to prove special damages in civil suits without calling the custodian of hospital records to personally testify as to the reasonable value of hospital charges. In view of the certificate of the custodian of such records required by Section 3 thereof, more particularly the last paragraph dealing with the, "reasonable value and price of the various charges," shown in the records, it could be strongly argued that this Act was civil in nature only. *Harris v. State,* 42 Ala.App. 264, 160 So.2d 511.

Section 1 of the Act states in part:

*"When the original would be admissible in any suit or proceeding,* . . . a cer-tified copy of the hospital records . . . when certified and affirmed by the custodian . . . shall be admissible in evidence without further proof . . . ." (Emphasis supplied)

Likewise, it could be argued that the purpose of the Act is merely to allow certified copies of original records to be admitted without the necessity of calling the custodian as a witness, but that the contents of the records must be shown to be admissible before this can be done.

We find that Act No. 77, *supra,* allows a properly certified copy of hospital records to be admitted into evidence without parol evidence from the custodian, but only, by the explicit terms of that statute, when the original would be admissible.

Hearsay in documents does not become admissible by merely having a custodian certify a copy to be the same as the original document. Here the copies of the hospital records could have been admitted without parol evidence of authenticity only if the original records were admissible. The record in this case shows the deceased to have been transferred from Montgomery to the University Hospital in Birmingham where he underwent treatment for some ten days until his death. During that time, he was treated by a variety of physicians in addition to Dr. Hallenbeck. Dr. Chambless did not treat him during that time, and did not see or make any of the hospital records in Birmingham. While Dr. Chambless could give his opinion as to the patient's condition when he last treated him and his prognosis as to the likelihood of recovery, he was not attending the deceased at the time of death and could not testify as to the cause of death based upon personal knowledge, but upon what he was told, heard or read. We do not think Dr. Chambless could authenticate the records from University Hospital in Birmingham and, in fact, no attempt was made nor a predicate laid for him to do so. There was no showing by competent evidence that he

was familiar with Parham's examination, diagnosis or treatment as a patient in Birmingham. The records were admitted solely on authority of Act No. 77, *supra.* See *Ward v. State,* 44 Ala.App. 229, 206 So.2d 897, syllabus 10 (1966–67).

The University Hospital records consist of 106 pages starting with a summary of the condition of the deceased during his treatment there and a statement as to the cause of death. The first paragraph of that report states:

"FINAL DIAGNOSIS: Gunshot wound of the upper abdomen followed by complications requiring four operative procedures before transfer to UH where operative procedure was done as an attempt to save his life for exsanguination which was followed by continued picture of sepsis and blood loss and progressing renal failure, bleeding to death."

The summary appears to have been written by William D. Johnston, M.D. The documents contained various physicians' notes, admission forms, daily medical treatment charts, nurses' notes and other material giving a detailed account of the extensive treatment Parham received. There is no doubt that these documents contained hearsay. The State cites *National Life and Accident Insurance Company v. Singleton,* 193 Ala. 84, 69 So. 80, as authority for asking Dr. Chambless the following question:

"Q. Doctor, based on your personal information, and based on examination of State's Exhibits 4, 5 and 7, do you have an opinion as to the cause of death of James Parham?"

Over vigorous objection by the Defense, the doctor was allowed to give his opinion as to the cause of death, previously quoted herein.

The *National Life* case, *supra,* holds that the cause of death is a matter of expert testimony and that an expert may be asked hypothetical questions. Here, there was no predicate laid by the State for asking the doctor a question concerning the University Hospital records. No showing was made that he had ever seen those records or that he was familiar with them or the treatment the deceased received in Birmingham. The trial court had previously sustained an objection to evidence concerning Dr. Chambless' telephone conversation with the attending physician in Birmingham. The State merely placed the records in evidence and immediately asked the doctor's opinion of the cause of death, based partially upon those records without a showing that the doctor had ever seen them.

There is no shortcut available to the prosecution in proving the elements of a murder case. The cause of death being a very critical element in a murder case, the State cannot unlock the flood gates with Act No. 77, *supra,* and unleash a torrent of otherwise inadmissible hearsay evidence going to such a key element of its proof.

IV

In *Hutchens v. State,* 45 Ala.App. 507, at p. 520, 232 So.2d 687, at p. 700, on rehearing, Judge Cates wrote:

"We consider that Act No. 77, approved September 30, 1965, p. 102 is not by the terms of its first clause pertinent so as to justify admission of Exhibit '40.' Accordingly, we do not decide whether the words therein of 'any suit or proceeding' embrace criminal trials. *Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed. 2d 923 and *Douglas v. Ala.,* 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 might indeed narrow the scope of the broad language found in *Todd v. State,* 13 Ala.App. 301, 69 So. 325.

"Nevertheless, we adhere to the view that Supreme Court Rule 45 averts error.

"Application overruled."

 We do not find that Supreme Court Rule 45 averts error in the instant application of the Act. We further hold

that where Act No. *77, supra,* is used to prove a material element in a criminal prosecution, there may arise a strong probability that the defendant may be denied his right to be confronted by witnesses and to cross examine them pursuant to Article 1, § 6, Constitution of Alabama 1901 and Amendments Six and Fourteen of the United States Constitution.

## V

■ None of the attending physicians from Birmingham were produced by the State as witnesses. Regardless of Title 7, § 386, Code of Alabama 1940, a certified copy of a death certificate cannot be used alone to prove the cause of death as alleged in a murder indictment where the physician attending the deceased at the time of his death, and who signed the death certificate, was within the state, but was not called as a witness by the prosecution. *Holman v. Washington,* 364 F.2d 618 (5 Cir. 1966).

In *Holman,* the United States Court of Appeals, 5th Cir., held:

"The constitutional right of confrontation and cross-examination to the extent guaranteed by the Sixth and Fourteenth Amendments cannot be sidestepped because it happens to be convenient for one of the parties. The importance of this right is emphatically demonstrated by the existence of the numerous safeguards designed for its protection. In addition to the Sixth Amendment of the United States Constitution, the right is also guaranteed by the Constitution of the State of Alabama, Article I, Section 6, Constitution of Alabama, 1901. . . .

"The constitutional right of confrontation could never have any greater meaning than when a person is on trial for his life under an indictment charging first degree murder. . . ."

It should, likewise, be pointed out that regardless of holdings prior to 1940, when the legislature codified all statutes into the 1940 Code of Alabama, the death certificate section was codified in Chapter 10, Article 2 of Title 7, entitled, "Civil Remedies and Procedure." A similar section does not appear in the Criminal Procedure sections of Title 15 of the Code.

■ We are not holding that a certified copy of a death certificate is inadmissible. We hold that such cannot be used as the sole evidence in a criminal prosecution for murder to prove the cause of death where live witnesses are available to the State, but are not used for that purpose. Likewise, it cannot be used in conjunction with other documents introduced pursuant to Act No. *77, supra,* or statutes of similar import where the end result would be proof of such key element of the murder charge solely on the basis of certified copies of documents, but without bringing forth available witnesses to confront the defendant or offer him an opportunity to cross examine them concerning their conclusions.

It could be argued that a certified copy of a death certificate is admissible as presumptive proof of the cause of death, as provided for in § 386, *supra,* and that the defendant may call expert witnesses to rebut such presumption. In a civil case, such an interpretation would not be unreasonable. In a criminal case, we think such a use of a presumption would be unconstitutional.

■ The burden of proof in all criminal prosecutions rests upon the State, with the presumption of innocence attending the defendant until that burden of proof has been met. To allow the State to simply introduce a certified copy of a death certificate and thus shift the burden to the defendant to disprove the facts set out therein would be an unconstitutional burden of such weight as to deprive a defendant of a fair trial and due process of law.

■ By use of certified copies of business documents and official records under

special statutes providing for such, it could be conceivable that the State could prove some offenses without the necessity of calling any witnesses at all, except for the guarantees of our state and federal constitutions. The right of a defendant to be confronted by witnesses against him, includes the right of cross examination. *Madden v. State,* 40 Ala.App. 271, 112 So. 2d 796 (1959), and cases cited therein.

As suggested by this Court earlier in *Hutchens, supra,* we find *Todd v. State,* 13 Ala.App. 301, 69 So. 325 (1915) to be modified in scope to conform with *Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965), and *Douglas v. Alabama,* 380 U.S. 415, 85 S.Ct. 1074, 13 L. Ed.2d 934 (1965). See also, *Barber v. Page,* 390 U.S. 719, 88 S.Ct. 1318, 20 L. Ed.2d 255 (1968). For reasons hereinabove set out, we find the appellant is due a new trial to be conducted in accordance with the principles herein enunciated.

Reversed and remanded.

All the Judges concur.