BOWEN, Presiding Judge.
Jonathan David Mayben, the appellant, was convicted for attempted murder and was sentenced to life without parole as a habitual felony offender with four prior convictions. He raises two issues on this direct appeal from that conviction.
L.
The appellant’s conviction must be reversed because of the improper admission of a forensic evaluation report.
Prior to trial, defense counsel filed a “motion for court-ordered mental examination of defendant.” C.R. 8. Psychologist Karl Kirkland examined the appellant and prepared an “outpatient forensic evaluation report.” He concluded that the appellant was both competent to stand trial and sane at the time of the offense:
“In summary, this forensic psychological evaluation of Jon Mayben reveals that he is capable of assuming the role of the defendant at this time. Evaluation further reveals that his well documented problem with chronic drug dependence did not render him unable to appreciate the criminality of his behavior at the time of the offense.” C.R. 103-04.
The forensic evaluation report contained the forensic psychologist’s diagnosis of the appellant and the information upon which that diagnosis was based. The report stated that it was based on information “obtained from data supplied by the district attorney’s office of Etowah County, previous treatment records, interviews with the defendant, and materials supplied by the defendant’s mother and an interview with the defendant himself.” C.R. 98. The report contained a “summary of alleged offense,” which included statements attributed to the victim and the appellant. It also contained numerous statements allegedly made by the appellant to the psychologist including the appellant’s admissions concerning suicide attempts, sexual history, and extensive drug and alcohol abuse. The report contains information which is extremely prejudicial to the appellant and which is not admissible in evidence.
The appellant entered pleas of not guilty and not guilty by reason of insanity. At trial, he presented lay witnesses as to his mental condition and abnormal behavior. The appellant testified in his own defense and stated that he was insane at the time of the crime. R. 145. On cross-examination of the appellant, the prosecutor was allowed, over objection, to introduce into evidence the entire “outpatient forensic evaluation report.” *725 Apparently, the trial judge accepted the prosecutor’s argument that the report should be admitted “[o]n the basis on the medical business records that have been presented to the court pursuant to the court’s order, and ... is a part of this court file.” R. 152.
A significant portion of the prosecutor’s closing argument to the jury was spent on the forensic evaluation report. Portions of the prosecutor’s argument were prefaced by the phrase “Dr. Kirkland says,” or “Dr. Kirkland tells.” R. 244, 247. The prosecutor emphasized Dr. Kirkland’s qualifications and that while Dr. Kirkland, a forensic psychologist, had found the appellant sane, no psychiatrist or psychologist had testified for the appellant. Moreover, the prosecutor urged the jury to read the entire report: “I want you to do that. I want you to read every bit of it.” R. 244.
Indeed, the entire case hinged on whether the jury “believed” the “testimony” of Dr. Kirkland. . As the prosecutor argued in his final closing argument to the jury:
“I submit to you that Mr. Downs [defense counsel] just told you in his closing argument that there was an attempted murder, unless he was insane. His statement to you was we’ve never disputed that the assault, the attack actually took place, and Jonathan Mayben is the one that did it. And then, he meant he meant [sic] to kill his ex-wife, that is what you were just told. That’s attempted murder. The only way, then in that incidence that you could find the defendant not guilty would be to find that he was legally insane....
“Now, Mack would suggest to you, you know, I didn’t have a chance to talk to Dr. Kirkland, but — I think your common sense tells you that if he had the authority to file a motion with this Court and get Dr. Kirkland to do the examination, he had the authority, just like I did, to issue a subpoena and bring him in, but he didn’t want you to do that because he didn’t know what Dr. Kirkland was going to say.
“He’s saying, simply discount Dr. Kirkland’s statements, because he only interviewed him [appellant] three hours. But, this is a licensed clinical psychologist who is experienced and who is trained, he interviews him, expresses his opinion, and goes way, way, way beyond that in his report. He spends the time not only examining this man, but also reviewing all of these hospital records. It says in the hospital records, it ain’t just me, but all of these other people that have seen this man, not one of them found a mental defect. Everyone of them says, the only thing wrong with this guy is he abuses drugs.” R. 255-56.
No hospital records were admitted into evidence.
In his instructions to the jury, the trial judge stated:
“I charge you, ladies and gentlemen of the jury, witnesses have testified in this case.
“There is an exhibit, a report by Dr. Kirkland I believe, as an expert. In this ease experts have been permitted to express an opinion or draw a conclusion. You will find that in the report.” R. 270-71.
In this case, we are not concerned with records from a state mental hospital or with any “medical examination” exception to the hearsay rule. See White v. Illinois, 502 U.S. —, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992). Here, the evaluation was conducted by a clinical psychologist in the medical offices of Kilby Prison. C.R. 97. This evaluation was not shown to qualify as a “hospital record” under Ala.Code 1975, § 12-21-5. See Ex parte Frith, 526 So.2d 880, 883 (Ala. 1987), holding that a letter written by a Bryce Hospital staff psychiatrist and sent to a psychiatric social worker who was a defense witness was not a hospital record. See also C. Gamble, McElroy’s Alabama Evidence § 254.01(7) (4th ed. 1991).
The comments of the Alabama Supreme Court in Ex parte Baker, 473 So.2d 1130 (Ala.1985), are applicable.
“This case is unlike Seay v. State, 390 So.2d 11 (Ala.1980), in which this Court held that Code 1975, § 22-50-22 providing for depositions of physicians at state mental health facilities ‘furnish[es] a constitutional alternative to compulsory attendance at trial.’ 390 So.2d at 14.
*726 “No such procedure exists to substitute for the cross-examination of a state toxicologist or his assistants.... Therefore, we do not approve of the language of- the Court of Criminal Appeals, 473 So.2d 1127, holding that the admission of the pathologist’s report was not error.”
Ex parte Baker, 473 So.2d at 1131. See also Grantham v. State, 580 So.2d 53, 55 (Ala.Cr.App.1991) (admission of toxicologist’s report was hearsay and violated defendant’s right of confrontation).
Furthermore, even if the forensic evaluation report in this case be considered a “hospital record,” its admission without the presence of Dr. Kirkland denied the appellant his constitutional rights of confrontation and cross-examination.
“The admission of such items as autopsy reports and hospital records without the attendance of their makers can constitute reversible error unless alternatives such as depositions or an opportunity to cross-examine at trial are provided. In determining whether documentary evidence introduced against a criminal defendant without the opportunity to cross-examine the maker satisfies the requirements of the confrontation clause, relevant facts include (1) whether the evidence has a degree of reliability, (2) whether the evidence is essentially documentary or essentially testimonial, (3) whether the evidence is collateral, used only in rebuttal or is probative of a material element of the offense and, if the latter, whether the evidence is cumulative, (4) whether the evidence connects the defendant directly to the offense, and (5) whether the defendant has an alternative to, or had a prior opportunity for, cross-examination.”
W. Schroeder and J. Hoffman, Alabama Evidence § 8-3(6)(a)(2), 426 (2d ed. 1993).
“Unless a statute provides otherwise, evidence generally only comes into court through articulation by a witness. That is, except for those things self-proving or matters presumed or noticed without proof, there is no anonymous evidence.” Hutchens v. State, 45 Ala.App. 507, 518, 232 So.2d 687, 697, cert. denied, 285 Ala. 755, 232 So.2d 700 (1970), quoted in Pickett v. State, 456 So.2d 330, 333 (Ala.Cr.App.1982).
In Lowery v. State, 55 Ala.App. 514, 518— 20, 317 So.2d 365, 369-70, cert. denied, 294 Ala. 763, 317 So.2d 372 (1975), this Court noted:
“We find that ... [Ala.Code 1975, § 12-21-5] allows a properly certified copy of hospital records to be admitted into evidence without parol evidence from the custodian, but only, by the explicit terms of that statute, when the original would be admissible.
[[Image here]]
“... We further hold that where ... [§ 12-21-5] is used to prove a material element in a criminal prosecution, there may arise a strong probability that the defendant may be denied his right to be confronted by witnesses and to cross examine them pursuant to Article I, § 6, Constitution of Alabama 1901 and Amendments Six and Fourteen of the United States Constitution.”
We also held in Lowery that, under what is now § 12-21-101, “a certified copy of a death certificate cannot be used alone to prove the cause of death as alleged in a murder indictment where the physician attending the deceased at the time of his death, and who signed the death certificate, was within the state, but was not called as a witness by the prosecution.” 55 Ala.App. at 520, 317 So.2d at 370. See also Arthers v. State, 459 So.2d 972 (Ala.Cr.App.1984) (where hospital record contained notation that defendant had stated that he would kill his wife if she did not take an overdose of drugs, it was error to admit without presence of person who made notation).
In this case, the report was highly “testimonial in nature, rather than mere recordation of fact.” Arthers, 459 So.2d at 975.
“In the instant case, there was no accounting made for the absence of the recorder of the statement, whoever he may have been. The statement was being offered to prove a vital portion of the State’s case and while we realize that other circumstantial evidence presented at trial could have been used to prove intent, the contents of the notation were too damaging *727 to the defense theory of accident to be categorized as harmless. The notation was testimonial in nature, rather than mere recordation of fact, and we must agree with appellant that using such a method to prove intent does not afford him the opportunity to test the contents of the statement or the circumstances under which it was made by questioning the individual who made the notation.
“The notation was, of course, multiple hearsay and as such it is ‘even more vulnerable to all the objections which attach to simple hearsay.’ C. Cleary, McCormick on Evidence, § 246 (2d ed. 1972).
“In the case of an opinion offered by hospital record,
“ ‘no cross-examination is possible. Consequently, there is a tendency somewhat to limit those opinions which can be introduced by this method. The admissibility of ordinary diagnostic findings customarily based on objective data and not usually presenting more than average difficulty of interpretation is usually conceded. On the other end of the continuum, diagnostic opinions which on their face are speculative are reasonably excluded. In the absence of the availability of the declarant for explanation and cross-examination, the probative value of this evidence is outweighed by the danger that it will be abused or mislead the jury.... [I]t would not be unreasonable in borderline eases to permit introduction of the record only if the declarant were produced for cross-examination.’ (Emphasis added.) McCormick, supra, § 313.
“Certainly an even more stringent standard must be applied where, as in the instant case, a statement is recorded in a hospital record that does not qualify in any way as a diagnostic opinion.”
Arthers, 459 So.2d at 975. See also Thompson v. Lauderdale County Dep’t of Pensions & Sec., 500 So.2d 1084, 1085 (Ala.Civ.App.) (in a civil dispositional proceeding to terminate the mother’s parental rights, information in psychologist’s written evaluation of mother’s mental condition which was included as an attachment to the report filed with the court by a social worker, was admissible because the “social worker who authored the court report was present at the hearing and was cross-examined by the mother”), cert, quashed, 500 So.2d 1087 (Ala.1986).
In the present case, although defense counsel’s major objections were that the report was not authenticated and that it constituted hearsay, the trial court was apprised of the basis for the objection with sufficient particularity to allow him to make an informed decision on the legal issue presented on appeal. Certainly defense counsel’s objections could have been better phrased. However, the objection in this case is distinguishable from the insufficient objection made in Weaver v. State, 591 So.2d 535, 539-40 (Ala.Cr.App.1991). Here, defense counsel stated:
“Well, Your Honor, let me state this. This is very similar to a drug test, it may be done if a drug test is required, but still, the guy that does the drug test has to come in to be cross-examined, and this is the same thing, and I object, it’s hearsay, and it [is] in violation of the Best Evidence Rule. They have not authenticated this in anyway, and we except to the Court’s ruling on that.” R. 153. (Emphasis added).
The appellant’s rights of confrontation and cross-examination were denied by the improper admission into evidence of the forensic evaluation report.
II.
On cross-examination of the victim, who was the ex-wife of the appellant, defense counsel sought to demonstrate her bias and prejudice by questioning her about a letter she had written to the appellant in which she allegedly stated that she “wanted him to give up his interest in the children so somebody else could adopt them, so [she] could get full custody of them,” and asking whether she had threatened to have the appellant arrested for “back child support.” R. 221. The trial court sustained the prosecutor’s objections and refused to permit inquiry into these matters.
We find that the appellant should have been permitted to cross-examine his ex- *728 wife concerning whether she had attempted to obtain full custody of their children and whether she had threatened to have the appellant arrested for “back child support” in order to show the witness’s bias and prejudice.
“ ‘[A] party is given wide latitude on cross-examination to test a witness’s partiality, bias, or interest.’ Perry v. Brake-field, 534 So.2d 602, 608 (Ala.1988). The rule in this state, notwithstanding the general principle concerning the development of the interest or bias of a witness, is that the range of cross-examination rests largely in the discretion of the trial court and that the court’s rulings will not be disturbed unless it clearly appears that the defendant was prejudiced by the rulings. However, ‘where the witness’ testimony is important to the determination of the issues being tried, there is little, if any, discretion in the trial judge to disallow cross-examination on matters which tend to indicate the bias of the witness.’ Wells v. State, 292 Ala. 256, 258, 292 So.2d 471, 473 (1973).
“ ‘It is always competent on cross-examination to make such interrogation of a witness as would tend to test his interest, bias or prejudice or to illustrate or impeach the accuracy of his testimony. Both our appellate courts have approved the principle stated in 2 Wig-more on Evidence, 2d Ed., § 949, p. 232: “The range of external circumstances from which probable bias may be inferred is infinite. Too much refinement in analyzing their probable effect is out of place.” Louisville & N. R. v. Martin, 240 Ala. 124, 198 So. 141, 144 [ (1940) ]; Sowell v. State, 30 Ala.App. 18, 199 So. 900 [ (1941) ]. And for emphasis we repeat the oft-stated rule that the latitude and extent of such cross-examination is a matter which of necessity rests largely within the sound judicial discretion, which will not be revised on appeal except in extreme cases of abuse. Such cross-examination may even pertain to irrelevant and immaterial matters as bearing on the memory, accuracy, credibility, interest or sincerity of the witness.’
“Housing Authority of City of Decatur v. Decatur Land Co., 258 Ala. 607, 612, 64 So.2d 594, 598 (1953). ‘ “The extent to which a witness may properly be cross examined as to collateral circumstances for the purpose of showing bias depends in some instances upon the importance of his testimony, and especially upon whether such testimony is of a nature to be seriously affected by prejudice, bias, or hostility.” ’ Louisville & N. R. v. Martin, 240 Ala. 124, 131, 198 So. 141, 147 (1940) (emphasis in original). ‘[I]t is an abuse of discretion and a violation of constitutional rights to deny to a defendant the right to cross-examine a witness at all on a “subject matter relevant to the witness’s credibility”, such as the witness’s possible motive for testifying falsely.’ United States v. Brown, 546 F.2d 166, 169 (5th Cir.1977). See Stinson v. State, 41 Ala.App. 575, 576, 142 So.2d 897, 898, cert. stricken, 273 Ala. 479, 142 So.2d 899 (1962) (State properly allowed to cross-examine wife, who testified for defendant-husband, as to whether she had previously been convicted for same offense of which defendant stood accused.). ‘We think that a criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby “to expose to the jury the facts from which jurors ... could appropriately draw inferences relating to the reliability of the witness.” Davis v. Alaska, [415 U.S. 308, 318, 94 S.Ct. 1105, 1111, 39 L.Ed.2d 347 (1974)].’ Delaware v. Van Arsdall, 475 U.S. 673, 680, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986).”
Hooper v. State, 585 So.2d 142, 145 (Ala.Cr.App.1991), cert. denied, — U.S. —, 112 S.Ct. 1295, 117 L.Ed.2d 517 (1992). See Frazier v. State, 365 So.2d 339, 341 (Ala.Cr.App.1978) (“[t]he facts that the appellant had caused the witness to be placed under arrest or placed under bond are facts having a tendency to create bias”).
We have no difficulty in concluding that because of the above errors, the appellant’s trial was fundamentally unfair. The judg *729 ment of the circuit court .is reversed and this cause is remanded for further proceedings not inconsistent with this opinion.
REVERSED AND REMANDED.
All Judges concur.