JOINER, Judge.
This Court's opinion of April 28, 2017, is withdrawn, and the following is substituted therefor.
D.E.R. was convicted of first-degree sodomy, see § 13A-6-63, Ala. Code 1975, and sexual abuse of a child less than 12 years old, see § 13A-6-69.1, Ala. Code 1975. D.E.R. was sentenced to concurrent terms of 25 years' imprisonment for the sodomy conviction and 20 years' imprisonment for the sexual-abuse conviction. All appropriate fines and fees were assessed against D.E.R.
Facts and Procedural History
The evidence at trial tended to show the following: K.R., who was 13 years old at the time of trial, testified that she and K.L., her cousin, would sometimes visit D.E.R., a relative. One day in December 2011, when K.R. and K.L. were eight years old, they went to D.E.R.'s house to deliver his mail. K.R. testified:
"A. We went down there. He asked us if we let little boys play in our panties and we said, 'No.' He said, 'I'll give you a dollar if you let me.'
"....
"A. After he asked us, I thought he was playing at first and then we went out-I went outside. And then when I looked and came back in, he was on his knees at the couch with [K.L.]
"....
"Q. Did you see this man here touch your cousin?
"A. Yes, ma'am.
"Q. Tell the jury what you saw, please.
"A. I seen him put his hand in her pants."
(R. 210-12.) K.R. testified that she and K.L. then went to K.R.'s mother's house. K.R. told her mother that she had seen D.E.R. touch K.L., and K.R.'s mother informed K.L.'s parents. K.R. identified D.E.R. in court. On cross-examination, K.R. testified that she did not see D.E.R. kiss K.L.'s vaginal area, as K.L. alleged.
K.L., who was 12 years old at the time of trial, testified that she spent a lot of time with K.R., whose father lives near D.E.R.'s house. K.L. testified that she and K.R. visited D.E.R. on December 16, 2011, and that their visit was different than usual because D.E.R. "asked us if we let little boys play in our panties." K.R. left D.E.R.'s house, but K.L. remained seated *245 on a couch in the living room. D.E.R. then moved in front of K.L. and put his hands in K.L.'s pants; D.E.R. touched K.L.'s genitals underneath her underwear. K.L. initially testified that she could not remember if D.E.R. touched her with any other part of his body. After some coaxing, K.L. testified as follows:
"Q. [K.L.], do you remember telling people that [D.E.R.] kissed you on your own spot?
"A. Yes, ma'am.
"Q. And did that happen?
"A. Yes, ma'am.
"Q. Did that happen that day when you were there when he put his hand in your panties?
"A. Yes, ma'am.
"....
"Q. Okay, [K.L.], tell the jury, if you will, what happened with [D.E.R.] when he did those things to you. We need you to tell us. Just the truth of what happened, okay?
"A. (No response.)
"Q. I'm sorry, sweetie. Can you tell the jury what he did?
"A. (No response.)"
(R. 265-67.) After a break, K.L. continued testifying:
"Q. [K.L.], I know this is hard for you to talk about, but can you please tell the jury where [D.E.R.] touched you?
"A. On my private part.
"Q. Okay. And what did he touch you with?
"A. His hand.
"Q. Okay. Did he touch you with any other part of his body?
"A. Not that I can remember.
"Q. Okay. Did he ever put his mouth on you?
"[DEFENSE COUNSEL]: Objection, Your Honor.
"THE COURT: Overruled.
"[DEFENSE COUNSEL]: Asked and answered.
"Q. Did he put his mouth on you?
"A. Yes, ma'am.
"Q. Where did he put his mouth?
"A. On my private part.
"Q. Okay. And that really happened?
"A. Yes, ma'am.
"Q. And can you tell this jury whether or not what you've told them here today, was it true?
"A. Yes, ma'am."
(R. 268-69.)
On cross-examination, K.L. had difficulty answering a number of D.E.R.'s questions; she could not recall several details of the events that occurred on December 16, 2011, and portions of her testimony were inconsistent with K.R.'s testimony. Specifically, K.L. testified:
"Q. Well, I know this is tough for you, but I need to know how you claim that [D.E.R.] kissed your private parts. How did he go about doing that?
"A. (No response.)
"Q. Let me try to help you, I guess. You said he kissed your private part, right?
"A. Yes.
"....
"Q. Did he pull your pants off? "A. No.
"Q. He did not. Okay. How did he kiss your private part with your pants on?
"A. I don't know."
(R. 280-81.)
T.L., K.L.'s mother, testified that D.E.R. is T.L.'s uncle. T.L. testified that, after K.R.'s mother contacted her, she and K.L.'s father went to K.R.'s mother's house. T.L. testified that K.L. was extremely *246 upset and did not want to discuss the incident. K.R. told T.L. and the other adults present that D.E.R. had touched K.L. but not that he had placed his mouth on K.L. T.L. then took K.L. to Riverview Regional Medical Center ("RRMC") to "make sure that nothing else had happened" to K.L. T.L. testified that K.R. had not told her that D.E.R. had kissed K.L.'s vaginal region; instead, T.L. testified that she first became aware of that specific accusation during the trial.
Because of K.L.'s difficulty testifying, the State obtained the medical records from K.L.'s visit to RRMC and moved to introduce them under the rule of completeness, Rule 801(d)(1)(B), Ala. R. Evid., the child-victim-witness act, and "as medical business records." In response, D.E.R. argued that the records should not be admitted because, he said: (1) the patient-declarant statements[1] contained therein were actually made by T.L.; (2) the statements contained in the records had already been testified to under oath; (3) the records were not certified; (4) the records were not properly authenticated absent witness testimony; and (5) the records were excluded by the trial court's previous ruling on D.E.R.'s motion in limine.[2]
The trial court ruled that the records were not excluded by D.E.R.'s motion in limine because until K.L.'s difficulty testifying the State had not intended to introduce the records. The court also noted that the records would need to be properly authenticated before they could be admitted, and the court recessed the trial until the following Monday.
When the trial reconvened, D.E.R. argued that the records were inadmissible, among other reasons, because they did not conform to a hearsay exception. The trial court questioned whether the records were admissible under Rule 803(4), Ala. R. Evid., and D.E.R. responded: (1) that K.L. testified to the same statements that were contained in the medical records and that the records would serve only to bolster K.L.'s testimony and could, therefore, prejudice D.E.R.; (2) that the person giving the patient-declarant statements in the records was not K.L.; (3) that statements of fault, such as identifying D.E.R. as the abuser, were inadmissible; (4) that the statements did not satisfy Rule 803(4), Ala. R. Evid.; and (5) that the health-care-professional declarant was not present to testify under oath or to be subject to cross-examination.
Ultimately, the trial court ruled that, under Rule 803(4), Ala. R. Evid., the State could read certain portions of the records to the jury. D.E.R. objected:
"Your Honor, one more objection for the record. We object to the records just coming in being read by the court. We think that the proper predicate would be for them to come in through a witness that's been called to the stand and not just read from the court as evidence or testimony and, therefore, just-
"THE COURT: All right. Well, objection noted, but denied."
(R. 370.)
The State read for the jury the following excerpt from K.L.'s medical records:
*247 "Initially this is from the case history:
" '[D.E.R.] touched her and kissed her and indicated vaginal area tearful.
" 'The patient reports a single assailant, who is known by the patient. [D.E.R.] Sexual acts. Fondling, yes. States he touched her there. Kept his clothes on.
" 'This eight-year-old Caucasian female presents to the ER via carry with complaints of reported sexual assault.
" 'Patient's great uncle reportedly offered her money to let him touch her between the legs. And he did that and then possibly kissed her between the legs.
" 'The patient denies any penetration or genital-to-genital contact.
" 'Event occurred earlier today.' "
(R. 373-74.)
During its deliberations, the jury asked the trial court if it could "see the hospital records," and the court informed the jury: "The hospital records themselves were not received into evidence. There was a section read into the record from the records, but the records themselves were not received into evidence. Therefore, they're not available for you to have with you in the jury room." (R. 509.) The jury subsequently found D.E.R. guilty of first-degree sodomy and sexual abuse of a child less than 12 years old.
Discussion
A.
On appeal, D.E.R. contends that the trial court abused its discretion when it admitted the statements contained in the medical records because, he says, the statements do not conform to Rule 803(4), Ala. R. Evid., and they were not properly authenticated. Specifically, D.E.R. claims that the statements did not meet the requirements set forth in Biles v. State, 715 So.2d 878 (Ala. Crim. App. 1997),[3] because: (1) the physician to whom the patient-declarant statements were made did not testify at trial, and, therefore, there was no evidence to show that the patient-declarant statements were relied upon in diagnosing or treating K.L.; and (2) the records "indicate that both [K.L.] and [T.L.] made statements to the doctor ... [and,] without the testimony of the doctor, the Court cannot be certain which statements can be attributed to either person."[4] (D.E.R.'s brief, p. 12.)
1.
Initially, we address the State's claim that, because D.E.R. did not object to the admission of the records on the specific basis he now raises on appeal, he has failed to preserve his claim for appellate review. See Ex parte Frith, 526 So.2d 880, 882 (Ala. 1987) ("The statement of specific grounds of objection waives all grounds not specified, and the trial court will not be put in error on grounds not assigned at trial."). Although D.E.R. objected *248 to the admission of the records on several grounds, he did not specifically cite Biles, supra, and claim that the State had failed to meet the requirements set forth in Biles. D.E.R. did, however, argue that the statements were not properly admissible absent testimony from the physician who had recorded the statements and that T.L., not K.L., made the statements. " 'This Court has always looked to substance over form,' Southern Sash Sales & Supply Co. v. Wiley, 631 So.2d 968, 971 (Ala. 1994)." Ex parte Abrams, 3 So.3d 819, 822 (Ala. 2008). See Cameron v. State, 615 So.2d 121, 124 (Ala. Crim. App. 1992) ("Although the appellant did not use the 'magic words' ... in stating his objection, the court was sufficiently 'inform[ed] ... of the legal basis of the objection.' "). The trial court was sufficiently informed that D.E.R. was objecting on the specific grounds he raises on appeal; therefore, we cannot say that D.E.R. failed to preserve this issue.
2.
We now turn to the merits of D.E.R.'s claim. The determination of whether the statements contained in the medical records were properly admitted involves a question of double hearsay.[5] Regarding double hearsay:
"If one of the foregoing statements is contained within another out-of-court statement then the party offering the evidence has a double or multiple hearsay problem. Suppose, for example, that a party offers a witness to authenticate a medical record which contains a patient's statement. Here there are two declarants-i.e., the person making the entry in the record and the patient. The declarations of both must satisfy hearsay. This could be accomplished in a number of ways. Either or both statements could fall within exceptions or they could be nonhearsay if offered to prove something other than the truth of the matter asserted. The proponent, however, will likely wish to offer such evidence as substantive proof of the matter asserted. This could be accomplished by qualifying the patient's declaration within the exception for statements reasonably pertinent to diagnosis or treatment and the medical record itself within the business record exception."
Charles Gamble, McElroy's Alabama Evidence § 261.03(9)(6th ed. 2009)(emphasis added). Rule 805, Ala. R. Crim. P., states that "[h]earsay within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules." (Emphasis added.) "The admission of evidence under a hearsay exception is within the sound discretion of the trial court. See Lacy v. State, 673 So.2d 820, 825 (Ala. Crim. App. 1995) (and cases cited therein)." Moore v. City of Leeds, 1 So.3d 145, 148 (Ala. Crim. App. 2008).
Here, the medical records contain the statements of two declarants: (1) the *249 patient declarant-K.L. and/or T.L.; and (2) the health-care-professional declarant who made the entry into the medical records.[6] D.E.R. argued that the statements should not be read to the jury (1) because the State failed to lay a proper predicate for their admission, which, he contended, required testimony to authenticate the medical records; and (2) because they did not conform to Rule 803(4). The State claimed, and the circuit court agreed, however, that, if the medical records themselves were not admitted as exhibits, the statements contained therein could be read aloud to the jury because those statements conformed to Rule 803(4). Having the jury receive the statements of both the patient declarant and the health-care-professional declarant as testimony as opposed to admitting the medical records as exhibits, however, did not serve to exempt the health-care-professional-declarant statements from the requirement that they conform to a hearsay exception; the statements were offered to prove the truth of the matter asserted-that D.E.R. had sexually abused and sodomized K.L.-and, accordingly, were hearsay. The record makes no indication that the State offered the health-care-professional-declarant statements under a hearsay exception. To the extent that the State offered the healthcare-declarant statements under Rule 803(4), those statements did not satisfy that exception.
"This Court, in Biles v. State, 715 So.2d 878, 887 (Ala. Crim. App. 1997), explained the scope of this hearsay exception:
" ' Rule 803(4) permits "all statements serving reasonably as the basis of diagnosis or treatment ... [to be admitted] as substantive proof of the matter asserted." Ala. R. Evid. 803(4), Advisory Committee's Notes. In determining whether a statement comes within the hearsay exception, courts have applied a "two-pronged test." The first prong "is the requirement that the statement must be one upon which medical personnel reasonably rely in diagnosis and treatment. The second prong consists of a requirement that the declarant possess a motive which is consistent with the rule's underlying purpose ... [of] seeking diagnosis or treatment." McElroy's Alabama Evidence § 261.02(4)(5th ed. 1996).' "
Moore, 1 So.3d at 148.
With respect to the first prong of Biles, supra, the health-care-professional-declarant statements were those "upon which medical personnel reasonably rely in diagnosis and treatment." Because the health-care-professional declarant did not testify, however, we can only speculate as to his or her motive in making such statements-e.g., recording them for other health-care professionals to utilize in diagnosing or treating K.L. Therefore, we cannot say that the health-care-professional-declarant statements satisfy the second prong of Biles.
Assuming, without deciding, that the patient-declarant statements conformed to Rule 803(4),[7] the health-care-professional-declarant *250 statements still failed to satisfy the requirement that they conform to a hearsay exception. To the extent that the State contends that the medical records were admissible under the business records exception of Rule 803(6), Ala. R. Evid., that argument also fails.[8] Rule 803(6) provides a hearsay exception for records of a regularly conducted activity; the rule states:
"A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnosis, made at or near the time by, or from the information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with Rule 902(11), Rule 902(12), or a statute permitting certification, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term 'business' as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit."
(Emphasis added.) " 'Unless a statute provides otherwise, evidence generally only comes into court through articulation by a witness.' " Pickett v. State, 456 So.2d 330, 333 (Ala. Crim. App. 1982) (quoting Hutchens v. State, 45 Ala. App. 507, 518, 232 So.2d 687, cert. denied, 285 Ala. 755, 232 So.2d 700 (1970) ).
No custodian or other qualified witness testified that the medical records complied with the requirements set out in Rule 803(4), and, as we discuss below, the records were not certified in compliance with a statute permitting certification.[9] The trial court, therefore, abused its discretion when it admitted the health-care-professional-declarant statements without requiring *251 that those statements satisfy a hearsay exception.
3.
The State argues, alternatively, that the statements were admissible because, it says, "no testimonial foundation is required under [ § 12-21-5 et seq., Ala. Code 1975 ] for the introduction of a medical record like K.L.'s." (State's brief, p. 16.) This argument, however, is without merit. This Court has held:
"[I]n order to constitute an exception to the hearsay evidence rule, the hospital record must be shown to have been made in the usual course of business, as required by Section 12-21-5[, Ala. Code 1975.] Section 12-2-6 and -7 must be read in conjunction with Section 12-21-5. Whetstone v. State, 407 So.2d 854, 860 (Ala. Cr. App. 1981). Section 12-21-5 is a 'specialized business record statute ... which renders admissible a certified copy of hospital records that are kept in the regular course of the particular hospital's business.' C. Gamble, McElroy's Alabama Evidence, Section 254.01(7), p. 99, 1980 Supplement (3rd ed. 1977). Consequently, a copy of a hospital record will constitute an exception of the hearsay evidence rule where (1) the copy was properly certified by the custodian (Section 12-21-7), (2) the original hospital record was made and kept in the usual and regular course of business of the hospital, (3) it was in the regular course of business of the hospital to make and keep such record, and (4) the record was made at the time of such acts, transactions, occurrences or events therein referred to occurred or arose or were made, or within a reasonable time thereafter ( Section 12-21-5 ) .... A certified copy of an original hospital record which meets the requirements of the business records act of Section 12-21-43 constitutes an exception to the hearsay rule. Seay v. State, 390 So.2d 11, 12 (Ala. 1980) ; McElroy, Section 254.01(7). However, hearsay in a properly certified copy of a hospital record not shown to have been made in the regular course of business is objectionable. Whetstone, 407 So.2d at 860-61 ; Lowery v. State, 55 Ala. App. 511, 518, 317 So.2d 357 [ (1974) ], cert. denied, 294 Ala. 763, 317 So.2d 372 (1975)."
Pickett, 456 So.2d at 332-33.
" 'Unless a statute provides otherwise, evidence generally only comes into court through articulation by a witness. That is, except for those things self-proving or matters presumed or notice without proof, there is no anonymous evidence.' Hutchens v. State, 45 Ala. App. 507, 518, 232 So.2d 687, 697, cert. denied, 285 Ala. 755, 232 So.2d 700 (1970), quoted in Pickett v. State, 456 So.2d 330, 333 (Ala. Cr. App. 1982).
"In Lowery v. State, 55 Ala. App. 514, 518-20, 317 So.2d 365, 369-70, cert. denied, 294 Ala. 763, 317 So.2d 372 (1975), this Court noted:
" 'We find that ... [ Ala. Code 1975, § 12-21-5,] allows a properly certified copy of hospital records to be admitted into evidence without parol evidence from the custodian, but only, by the explicit terms of that statute, when the original would be admissible.' "
Mayben v. State, 629 So.2d 723, 726 (Ala. Crim. App. 1993). See also Lowery v. State, 55 Ala. App. 514, 520, 317 So.2d 365, 370 (1975) ("[A] certified copy of a death certificate cannot be used alone to prove the cause of death as alleged in a murder indictment where the physician attending the deceased at the time of his death, and who signed the death certificate, was within the state, but was not called as witness by the prosecution.");
*252 Arthers v. State, 459 So.2d 972 (Ala. Crim. App. 1984) (noting that where hospital record contained notation that defendant had stated that he would kill his wife if she did not take an overdose of drugs, it was error to admit without presence of person who made notation).
Section 12-21-5, Ala. Code 1975, provides:
"When the original would be admissible in any case or proceeding in a court in the state, a certified copy of the hospital records of any hospital organized or operated under or pursuant to the laws of Alabama, including records of admission, medical, hospital, occupational, disease, injury and disability histories, temperature and other charts, X rays and written interpretations thereof, pictures, photographs, files, written orders, directions, findings and reports and interpretations of physicians, doctors, surgeons, pathologists, radiologists, specialists, dentists, technicians and nurses, as well as of all employees of such hospital, forming a part of such hospital records as to the health, condition, state, injuries, sickness, disease, mental, physical and nervous disorders, duration and character of disabilities, diagnosis, prognosis, progress, wounds, cuts, contusions, lacerations, breaks, loss of blood, incisions, operations, injuries, examinations, tests, transfusions, hospitalization and duration thereof, medication, medicines, supplies, treatment and care and the cost, expenses, fees and charges therefor and thereof, a part of, or shown on or in, said hospital records of any patient in said hospital, when certified and affirmed by the custodian of said hospital records when certified and affirmed by the custodian of said hospital records as provided in Section 12-21-7, shall be admissible in evidence, without further proof in any court in the state where admissible, if and when said hospital records were made and kept in the usual and regular course of business of said hospital to make and keep said records and that said records were made at the time of such acts, transactions, occurrences or events therein referred to occurred or arose or were made, or within a reasonable time thereafter."
Section 12-21-7, Ala. Code 1975, provides:
"The certificate of the custodian of the hospital records provided for in Sections 12-21-5 and 12-21-6 shall show the name of the parties to the case or proceeding and the name of the court to which made, by appropriate caption, and said certificate shall be in form in substance as follows, to-wit:
"I, ________________, hereby certify and affirm in writing that I am ________________ of the ________________ Hospital, a hospital organized or operated pursuant to or under the laws of Alabama, located at ________________, Alabama, that I am custodian of the hospital records of said hospital and that the within copy of said hospital records are an exact, full, true and correct copy of said hospital records pertaining to ________________.
"I further certify that I am familiar with and know, and knew when made and charged, the reasonable value and price for the various charges made and shown in said hospital records pertaining to ________________ and that said charges are in my judgment just, reasonable and proper and in keeping with those generally charged in the county and community where said hospital is located.
"All of which I hereby certify and affirm on this ____ day of ________________, 2___."
*253 The record on appeal contains an affidavit that accompanied K.L.'s medical records. The affidavit reads as follows:
"Before me, the undersigned authority, personally appeared HIM Director who being duly sworn deposed as follows:
"My name is Bryan McCauley, CFO, I am of sound mind, capable of making this affidavit, and personally acquainted with the facts herein stated:
"I am the custodian of records for Riverview Regional Medical attached hereto are 14 pages of medical records. These said pages are kept in the regular course of business, and it was in the regular course for an employee or representative of RRMC, with knowledge of the act, event, condition, or diagnosis, recorded to make the record or to transmit information thereof to be included in such record; and the record was made at or near the time or reasonabl[y] soon thereafter.
"The records attached hereto are originals or exact duplicates of originals and nothing has been removed from the original files before making copies."
(C. 63.) The affidavit was signed by Bryan McCauley and was notarized and dated April 11, 2016.
In Yarborough v. Springhill Memorial Hospital, 545 So.2d 32 (Ala. 1989), the Supreme Court of Alabama held that medical records attached to an affidavit had not been certified in accordance with § 12-21-7, Ala. Code 1975. The affidavit-submitted by Josie Carter-read, in relevant part:
" 'I am familiar with the standards of hospital and nursing practice which govern the operation of a hospital operating room, in Mobile, Alabama, the State of Alabama, and the national medical community.
" 'I have reviewed the hospital records relative to treatment of Samuel Yarborough while he was a patient at Springhill Memorial Hospital in October of 1986. Particularly, I have reviewed the Springhill Memorial Hospital records pertaining to the treatment of Mr. Yarborough while he was a patient in the operating room. Copies of the hospital records are attached herewith and designated as Exhibit "1" to this Affidavit [omitted from this opinion].' "
545 So.2d at 33.
The affidavit submitted in Yarborough, supra, was substantially more detailed than the affidavit in the instant case. Although the affidavit accompanying K.L.'s records lists "State of Alabama" and "County of Etowah" in the caption and names RRMC and the custodian of records, it fails to refer to D.E.R., the Etowah Circuit Court, or the location of the hospital. Most notably, however, is its lack of reference to K.L.-the patient about whom the medical records were prepared. The affidavit states only generally that "14 pages of medical records ... kept in the regular course of business" are attached thereto. Here, the affidavit accompanying K.L.'s medical records fails to substantially comply with § 12-21-7, Ala. Code 1975, and, therefore, we cannot say that K.L.'s medical records were certified in accordance with that statute. Because the medical records were not certified, the State's argument is without merit.
B.
Having found that the trial court erred in the admission of the statements in the medical records, we must determine whether that error was harmless. Rule 45, Ala. R. App. P., provides:
"No judgment may be reversed or set aside, nor new trial granted in any civil or criminal case on the ground of misdirection of the jury, the giving or refusal *254 of special charges or the improper admission or rejection of evidence, nor for error as to any matter of pleading or procedure, unless in the opinion of the court to which the appeal is taken or application is made, after an examination of the entire cause, it should appear that the error complained of has probably injuriously affected substantial rights of the parties."
The Supreme Court of Alabama has stated:
"The harmless error rule excuses the error of admitting inadmissible evidence only because the evidence was so innocuous or cumulative that it could not have contributed substantially to the adverse verdict, Ex parte Curtis 502 So.2d 833 (Ala. 1986), and Ex parte Bush, 474 So.2d 168 (Ala. 1985)."
Ex parte Baker, 906 So.2d 277, 284 (Ala. 2004).
"[I]n assessing harmless error, the factors to be considered include ' " 'the importance of the [declarant's] testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the [declarant] on material points, ... and the overall strength of the prosecution's case.' " ' Baker v. State, [906 So.2d 210, 240 (Ala. Crim. App. 2001), rev'd on other grounds, Ex parte Baker, 906 So.2d 277 (Ala. 2004) ) ](quoting James v. State, 723 So.2d 776, 782 (Ala. Crim. App. 1998) (in turn quoting Delaware v. Van Arsdall, 475 U.S. 673, 684, 106 S.Ct. 1431, 89 L.Ed. 2d 674 (1986) ))."
Featherston v. State, 849 So.2d 217, 222 (Ala. 2002). This Court has stated that, when determining whether an error is harmless, " ' "[t]he question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." ' " James v. State, 723 So.2d 776, 781 (Ala. Crim. App. 1998) (quoting Chapman v. California, 386 U.S. 18, 23, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) ).
As noted above, the State introduced the statements at the end of its case-in-chief because of K.L.'s difficulty in testifying to the acts-specifically, the sodomy-that D.E.R. is alleged to have committed. K.L. testified that D.E.R. placed his hand between her legs underneath her underwear, and, after some coaxing from the prosecutor, K.L. testified reluctantly that D.E.R. kissed her vaginal region. K.R. testified that she saw D.E.R. place his hands in K.L.'s pants but that she did not see D.E.R. kiss K.L.'s vaginal region. T.L. testified that she took K.L. to the hospital after K.R. informed her that D.E.R. had touched K.L.'s genitals but that she had been unaware of the allegation that D.E.R. had kissed K.L.'s vaginal region until trial. The State moved to admit the statements after K.L. testified, stating that it had not anticipated that K.L. would have such difficulty on the stand. Accordingly, the statements contained in the medical records were of significant importance to the State's case, at least with respect to the sodomy charge.
The overall strength of the State's case with respect to the sexual-abuse charge[10] was supported by the statements in the medical records in addition to testimony from K.L., K.R., and T.L. Specifically, K.R. and K.L. testified that D.E.R. asked them if they "let little boys play in [their] panties" and that D.E.R. touched *255 K.L.'s genitals; likewise, T.L. testified that she learned that D.E.R. had touched K.L.'s genitals. The testimony from K.R., K.L., and T.L., therefore, corroborated the statements from the medical records. Although the statements in the medical records were improperly admitted, they were cumulative to a plethora of other properly admitted evidence. See Brownfield v. State, 44 So.3d 1, 21 (Ala. Crim. App. 2007) ("The erroneous admission of evidence that is merely cumulative is harmless error."). Accordingly, the admission of the statements was harmless as evidence in D.E.R.'s sexual-abuse case.
On the other hand, the overall strength of the State's case with respect to the sodomy charge depended largely on the statements from the medical records.[11] As noted above, the State sought to admit the records only because it was not satisfied with K.L.'s reluctant and inarticulate testimony that D.E.R. had kissed her genitals, which was, aside from the statements in the medical records, the State's only evidence that D.E.R. had committed sodomy. Moreover, the fact that the jury requested to view the medical records indicates that the jurors considered the statements during their deliberations. We can only speculate as to the verdict the jury might have returned on the sodomy charge without the statements. Consequently, there is a reasonable possibility that the statements might have contributed to D.E.R.'s sodomy conviction, and we cannot say that the statements were so innocuous or cumulative that they could not have contributed substantially to the verdict returned against D.E.R. on the sodomy charge.
Conclusion
The trial court abused its discretion when it admitted the health-care-professional-declarant statements without requiring the statements to conform to a hearsay exception. Although the statements were cumulative to and corroborated by other evidence, they were significant in proving the sodomy charge against D.E.R. and served to substantially strengthen the State's case in that regard. We cannot affirmatively rule out the reasonable possibility that the statements might have contributed to D.E.R.'s sodomy conviction; therefore, the erroneous admission of the statements was not harmless as to that conviction. With respect to D.E.R.'s sexual-abuse conviction, however, the error was harmless.
Based on the foregoing, the judgment of the trial court is affirmed with respect to D.E.R.'s sexual-abuse conviction and reversed with respect to D.E.R.'s sodomy conviction, and this case is remanded for proceedings consistent with this opinion.
APPLICATION FOR REHEARING GRANTED IN PART AND OVERRULED IN PART; OPINION OF APRIL 28, 2017, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
Welch and Kellum, JJ., concur. Windom, P.J., and Burke, J., concur in the result.

As we discuss below, whether the records and the statements contained therein were admissible involves a question of double hearsay. We refer to the statements made to the health-care professional by K.L. and/or T.L. as the "patient-declarant statements"; likewise, we refer to the statements made by the health-care professional and entered into the medical records as the "health-care-professional-declarant statements."

Before trial, D.E.R. moved to exclude "any other documents not otherwise published at this point in time," and the trial court granted his motion.

Biles established the following two-prong test for whether a statement falls within 803(4): (1) "[T]he statement must be one upon which medical personnel reasonably rely in diagnosis and treatment"; and (2) "the declarant [must] possess a motive which is consistent with the rule's underlying purpose ... [of] seeking diagnosis or treatment." 715 So.2d at 887.

D.E.R. also appears to argue that the records were improperly admitted because the doctor who treated K.L. did not "testify that the statements as to the identity of the assailant were necessary for the treatment of [K.L.]" (D.E.R.'s brief, p. 7.) D.E.R. does not support this claim with legal authority or citations to the record, and he fails to delineate his argument with respect to this issue. Accordingly, this claim is deemed waived. See Rule 28(a)(10), Ala. R. App. P.

Again, although D.E.R. did not speak the words "double hearsay" at trial and does not explicitly state them in his brief on appeal, the substance of his argument was sufficiently clear to inform the circuit court and this Court of the legal basis of his argument-that the medical records themselves were hearsay and did not conform to Rule 803(4) and, therefore, were inadmissible without witness testimony to authenticate them. " 'This Court has always looked to substance over form,' Southern Sash Sales & Supply Co. v. Wiley, 631 So.2d 968, 971 (Ala. 1994)." Ex parte Abrams, 3 So.3d 819, 822 (Ala. 2008). See Cameron v. State, 615 So.2d 121, 124 (Ala. Crim. App. 1992) ("Although the appellant did not use the 'magic words' ... in stating his objection, the court was sufficiently 'inform[ed] ... of the legal basis of the objection.' ").

The record on appeal indicates that an attending physician, a registered nurse, and a licensed practical nurse all signed K.L.'s medical records.

Briefly, we note that the patient-declarant statements appear to conform to Rule 803(4). With respect to the first prong of Biles, supra, "[a] patient's statement that she had been raped ... would certainly be pertinent to medical diagnosis and treatment." Gamble, § 261.02(4). With respect to the second prong-"the requirement that the declarant possess a motive which is consistent with the rule's underlying purpose"-T.L. testified that she took K.L. to RRMC after learning of the accusations that D.E.R. had sexually abused K.L. because, she testified, she wanted to determine whether any further abuse had occurred. Id. We also note that "[n]othing within the express language of the rule requires that the statement have been made by the patient or person seeking diagnosis or treatment." Id. at § 261.02(3). See also Moore v. City of Leeds, 1 So.3d 145, (Ala. Crim. App. 2008).

In its brief on appeal, the State cites in passing Cope v. State Department of Human Resources, 549 So.2d 982, 986 (Ala. Civ. App. 1989), for the proposition that "hospital records are regarded as especially trustworthy in this state" and Heckford v. Florida Department of Corrections, 699 So.2d 247, 251 (Fla. Dist. Ct. App. 1997), for the proposition that " 'Under the business records exception, the trustworthiness of medical records is presumed.' " (State's brief, p. 16.)

Rule 803(6) provides that records of a regularly conducted business may be certified under Rule 902(11) or 902(12), Ala. R. Evid. Rule 902(11) concerns certified domestic records of regularly conducted activity, and Rule 902(12) concerns certified foreign records or regularly conducted activity. Accordingly, those provisions are not applicable here.
On application for rehearing, the State argues that the records were admissible under Rules 803(1) and 902(11), Ala. R. Evid. The State did not present these arguments in its original brief on appeal; therefore, they are not properly before this Court. See Thomas v. State, 224 So.3d 688, 693 (Ala. Crim. App. 2016) (citing Water Works & Sewer Bd. of City of Selma v. Randolph, 833 So.2d 604, 608-09 (Ala. 2002) ("The well-settled rule of this Court precludes consideration of arguments made for the first time on rehearing. See Ex parte Lovejoy, 790 So.2d 933, 938-99 (Ala. 2000), where this Court stated: ... ' " 'New supporting arguments presented for the first time on rehearing generally will not be considered.' Stover v. Alabama Farm Bureau Ins. Co., 467 So.2d 251, 253 (Ala. 1985) (opinion on application for rehearing))." ' ").

"A person commits the crime of sexual abuse of a child less than 12 years old if he or she, being 16 years old or older, subjects another person who is less than 12 years old to sexual contact." § 13A-6-69.1 Ala. Code 1975. Sexual contact is "[a]ny touching of the sexual or other intimate parts of a person not married to the actor, done for the purpose of gratifying the sexual desire of either party." § 13A-6-60, Ala. Code 1975.

In order to convict D.E.R. of first-degree sodomy, the State was required to prove that D.E.R., being at least 16 years old, engaged in deviate sexual intercourse with K.L., who was less than 12 years old at the time of the offense. See § 13A-6-63(a)(3), Ala. Code 1975. Deviate sexual intercourse is "[a]ny act of sexual gratification between persons not married to each other involving the sex organs of one person and the mouth or anus of another." § 13A-6-60, Ala. Code 1975.